MURRAY, J.,
concurs with reasons.
| lAlthough I agree with the result reached and the rationale adopted by the majority opinion, I write to more fully address some of the arguments HANO advanced. This case presents compelling, competing interests. On the one hand, Congress enacted Section 525(a) to protect debtors from bankruptcy-based discrimination by governmental units that provide essential services. On the other hand, the ■viability of public housing programs is dependent on enforcement of the requirement that tenants promptly pay their rent.
Section 525(a) provides that its protection extends to “licenses, permits, charters, franchises,” and to “other similar grants.” The statute, however, does not define the term “other similar grants.” Construing the contours of the catchall phrase “other similar grants” is the primary dispute over the application of Section 525(a) in the public housing setting; is a public housing lease an “other similar” grant within the meaning of Section 525(a). The most prominent case addressing this issue is In re Stoltz, 315 F.3d 80, 91 (2d Cir.2002).
The majority in Stoltz, citing dictionary definitions, concluded that a “housing lease is a grant by which a public housing authority conveys to a public housing tenant the right to use and occupy public housing in exchange for rent.” Id. at 89-90.[1]
|2The majority identified the common qualities of the specified grants protected under section 525(a) — licenses, permits, charters, and franchises — to be that such grants are unobtainable from the private sector and are essential to a debtor’s fresh start. The majority found that a public housing lease was a similar grant because it too was unobtainable from the private sector and essential to a debtor’s fresh start. The majority further found that a debtor tenant who was evicted from public housing, in all likelihood, would become homeless, which condition would not promote the fresh start policy of the Bankruptcy Code. The majority still further found that its construction of the phrase “other similar grants” as including public housing leases was consistent with the legislative history of Section 525(a), which indicated that the enumeration of various forms of protected grants was not intended to be exhaustive. Id. at 89, n. 4.
Conversely, the dissent in Stoltz, which HANO cites in support of its arguments, identified the common characteristic of the specified grants protected under Section 525(a) to be that “each allows the grant-holder to engage in certain regulated conduct.” Id. at 95. The dissent thus concluded that “other similar grants” means “grant[s] relating to authorization to engage in income-generating conduct.” Id. Based on this reasoning, the dissent concluded that Section 525(a) did not extend to public housing leases because “[s]uch leases do not directly enable their holders to engage in the kind of an income-generating activity as do licenses, permits, charters, and franchises.” Id. at 96. The dissent further reasoned that “not to include *278 leases makes sense as a matter of public housing policy.” Id. As alluded to earlier, construing Section 525(a) to protect debtors from bankruptcy-based discrimination by governmental units that provide essential services is at odds with the public housing policy of requiring prompt rental Inpayments by tenants. “Congress emphasized the importance of requiring prompt rental payments from public housing tenants when it conditioned contributions to public housing agencies on ‘the establishment of satisfactory procedures designed to assure the prompt payment and collection of rents and the prompt processing of evictions in the case of nonpayment of rent.’ ” Id. at 96 (quoting 42 U.S.C. § 1437d(c) (4) (B)).
Although the dissent in Stoltz makes a valid point, I am persuaded by the rationale of the majority in Stoltz that “the plain language of the provision indicates that eviction [of a public housing tenant because of non-payment of pre-petition rent] would revoke a protected grant, i.e., the lease, in violation of section 525(a).” Id. at 89. Congress intended that Section 525(a) protect bankrupt debtors’ fresh start, and the legislative history specifically rejects a narrow construction of this statute. Id. at 92, n. 6. The legislative history also indicates that the judiciary was assigned the task of establishing the boundaries of this anti-discriminatory provision in accord with sound bankruptcy policy. Id. The broad construction of Section 525(a) espoused by the majority in Stoltz is bolstered by the more recent United States Supreme Court opinion in Federal Communications Comm’n v. NextWave Personal Communications, 537 U.S. 293, 303, 123 S.Ct. 832, 154 L.Ed.2d 863 (2003), which broadly construed Section 525(a) to reject a governmental agency’s arguments that its regulatory conditions should be excluded from the scope of the statute.
Disallowing HANO’s eviction of Mr. Ea-son because of his pre-petition debt does not free him from his rental obligation. Should he fail to pay post-petition rent in accordance with the lease agreement, HANO can evict him.
For these reasons, I concur.
McKAY, J., dissents with reasons.

. The majority in Stoltz cited Merriam Webster’s Collegiate Dictionary 507 (10th ed.2000)(defining a grant as "a transfer of property by deed or -writing”), and Black’s Law Dictionary, 707 (7th ed. 1999)(defining a grant as "[a]n agreement that creates a right of any description other than the one held by the grantor. Examples include leases, easements, charges, patents, franchises, powers, and licenses.”)